UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN KENJI LE BROCQ | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | No. <u>3:18-cv-01423-S</u> |
| THE CITY OF CARROLLTON, TEXAS; | § | |
| FANNING HARPER MARTINSON BRANDT | § | |
| & KUTCHIN, P.C; a Texas Professional | § | |
| Corporation and THOMAS P. BRANDT, | § | |
| Individually; MERIDETH LADD; | § | |
| SUSAN KELLER; and MARY SCANLON | § | |
| | § | |
| *Defendants.* | § | |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS
CONTESTED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

---

/s/ Stephen Le Brocq
Stephen Le Brocq
Texas SBN: 24094791
E: stephen@lebrocqlawgroup.com

Plaza of Josey Ranch
2150 North Josey Lane, Suite 227
Carrollton, Texas 75006
Phone: (469) 930-4385
Fax: (866) 820-6005
Email: SERVICE@lebrocqlawgroup.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

*TABLE OF CONTENTS* ................................................................. *2*

*TABLE OF AUTHORITIES* ............................................................. *3*

*STATEMENT OF FACTS* ............................................................... *4*

*ARGUMENT* ........................................................................... *9*

   I.   **Plaintiff is Likely to Succeed on the Merits because Mr. Le Brocq's Rights to Free Speech, Assembly, and to Petition the Government are Protected by the First Amendment.** ...................................................................**10**

      a.   **The City Facilities from Which Plaintiff Has Been Banned Are Traditional Public Forums in Which Regulation of Speech Is Subject to Strict Scrutiny.**.........................**11**

      b.   **The Ban Imposed on Plaintiff Is Subject to, and Fails, Strict Scrutiny.**................**14**

      c.   **Defendants' Ban Fails Even Intermediate Scrutiny.** ...........................**17**

   II.   **Defendants' De Facto Cease and Desist Letter Policy Is Facially Unconstitutional Due to Lack of Objective Standards, Vagueness, and Overbreadth** ..................**19**

   III.  **Plaintiff Will Suffer Irreparable Injury if the Defendants are not Enjoined from the Indefinite Ban on Communication with the City.** .......................................**21**

   IV.   **The Continuing Irreparable Injury to Plaintiff Outweighs Any Potential Harm to Defendants' Interest from the Limited Relief Sought.**.................................**22**

   V.   **Granting the Requested Relief Would Serve the Public Interest.** ............................**23**

   VI.   **Brandt's Letter Was a Threat to Scare Mr. Le Brocq from Exposing the City**....**23**

*PRAYER FOR RELIEF* ................................................................. *25*

## TABLE OF AUTHORITIES

**CASES**

*Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998) ............................ 12, 14, 15
*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) .................................. 16, 18, 19
*Café Erotica of Florida, Inc. v. St. Johns Cnty.*, 360 F.3d 1274 (11th Cir. 2004) ...................... 14
*Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330 (5th Cir. 2001) ............................... 11, 14
*City of Madison Joint Sch. Dist. No. 8 v. Wis. Pub. Emp't Relations Comm'n*, 429 U.S. 167 (1976) .................................................................................. 13
*Collins v. Ainsworth*, 382 F.3d 529 (5th Cir. 2004)................................................ 14, 19
*Collinson v. Gott*, 895 F.2d 994 (4th Cir. 1990)........................................................ 13
*Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262 (5th Cir. 2012)..................... 10, 21
*EIU, Local 5 v. City of Houston*, 595 F.3d 588 (5th Cir. 2010) ..................................... 11, 19, 20
*Estiverne v. Louisiana State Bar Ass'n*, 863 F.2d 371 (5th Cir. 1989).......................................14
*Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010) ............................................11
*Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123 (1992)............................................. 19, 20
*Hague v. Comm. for Indus. Org.*, 307 U.S. 496 (1939)............................................................11
*Hays Cnty. Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992).................................................. 11, 17
*Jones v. Heyman*, 888 F.2d 1328 (11th Cir. 1989) ....................................................................13
*Mesa v. White*, 197 F.3d 1041 (10th Cir. 1999) .......................................................................13
*Musso v. Hourigan*, 836 F.2d 736 (2nd Cir. 1988)...................................................................14
*Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502 (5th Cir. 2009)...............21
*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) ....................................12
*Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65 (1st Cir. 2004)....................................16
*Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819 (1995).......................12
*Smith v. Tarrant Cnty. Coll. Dist.*, 670 F. Supp. 2d 534 (N.D.Tex. 2009) .................................23
*Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546 (1975)................................... 10, 14, 19
*Stacy v. Williams*, 306 F. Supp. 963 (N.D. Miss. 1969) ..........................................................14
*Turner Broad. Sys., Inc.* v. *FCC*, 512 U.S. 622 (1994) ...........................................................15
*Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997) ...........................................23
*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ......................................................... 17, 18
*Ward v. Utah*, 398 F.3d 1239 (10th Cir. 2005) .......................................................................15

**STATUTES**

Texas Code of Criminal Procedure Article 39.14 ................................................................4, 5

**OTHER AUTHORITIES**

CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE §2948.1 (2d ed. 1995).............................................................................................................22
*Content and Viewpoint Discrimination: Malleable Terms Beget Malleable Doctrine*, 13 Comm.L.&Pol'y 131, 180 (2008) ............................................................................17

**RULES**

FED.R.CIV.P. 65(a)...............................................................................................................10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN KENJI LE BROCQ | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | No. 3:18-cv-01423-S |
| THE CITY OF CARROLLTON, TEXAS; | § | |
| FANNING HARPER MARTINSON BRANDT | § | |
| & KUTCHIN, P.C; a Texas Professional | § | |
| Corporation and THOMAS P. BRANDT, | § | |
| Individually; MERIDETH LADD; | § | |
| SUSAN KELLER; and MARY SCANLON | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS
CONTESTED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

## STATEMENT OF FACTS

What started as a routine request for criminal discovery under Texas Code of Criminal Procedure Article 39.14, also known as *"The Michael Morton Act,"* has unfortunately landed the parties in federal court. The City of Carrollton, Texas ("the City") is notorious in the legal community for, *inter alia*, their fundamental lack of fairness. For that and many other reasons, many lawyers refrain from representing defendants with cases pending in the Carrollton Municipal Court. Plaintiff, Stephen Le Brocq, an attorney with a law office and home in Carrollton, was tired of the City of Carrollton Municipal Court's Official's abuse of power, lack of civility, and irreparable harm suffered by hundreds, if not thousands, of defendants.

Knowing the way Carrollton operated (contrary to law), Mr. Le Brocq used one of his cases where his client requested law enforcement videos (body and in-car dash cameras) to bring

the prosecutors' illegal conduct to light. On March 1, 2018, Mr. Le Brocq requested discovery from the State of Texas—directed at the City of Carrollton City Attorney's Office. The State, as always, resisted his request for the videos and instead, demanded that Mr. Le Brocq schedule a meeting with the State and bring a recording device so that he could record a video of the State's computer screen or projector. Knowing *the Michael Morton Act* requires the State to allow electronic duplication, he refused to "view" or "photograph" the evidence because the plain-language of *the Michael Morton Act* makes it clear that the State's duties are not discretionary. The statute does not permit the State to pick and choose which portions of the law they wish to comply with. Mr. Le Brocq further explained that his office maintains hundreds of cases in Texas and Illinois and the State's schedule did not work with his, even if he wanted to elect an option for obtaining his client's discovery files other than electronic duplication. Electronic duplication would also allow Mr. Le Brocq to view the Metadata of the officers' videos—something that cannot be captured by using an iPhone to record a video of a video. Besides the fact that it is unlawful not to provide the evidence defendants are entitled to, it is unreasonable to expect a defense lawyer to hold his or her phone to a computer screen to record a video that could potentially be hours in length.

The prosecutor representing the State was unbothered by Mr. Le Brocq's issues surrounding their patent violations of the law, noting that it was "unfortunate" for Mr. Le Brocq that his schedule did not comport with the State's. Still, eager to get the State in compliance with the law, Mr. Le Brocq informed the State that he would provide a DVD or flash drive to obtain his electronic duplicates of the State's discovery. The State replied that it would be "unreasonable" to put such devices into the city's computer system. Mr. Le Brocq attempted to alleviate this purported concern by offering to provide the same in an unopened package. Instead of replying to

Mr. Le Brocq's offer, the State encouraged him to file any motion he deemed necessary with the court.

Mr. Le Brocq filed his motion, citing the relevant law and attaching all of his attempts at obtaining his electronic duplicates on March 7, 2018, and the motion was heard on March 15, 2018. At the hearing, the State sent a different prosecutor to argue the motion. *For the first time,* the State argued that it did not have the technology to electronically duplicate the video files in evidence. Mr. Le Brocq was curious as to why this argument was now being made because when he told the State he would provide DVD or flash-drive, the State *never* stated it lacked the technology to burn the videos—only that they would not. The Court summarily denied Mr. Le Brocq's request. He then prepared and filed a Motion for Leave of Court to file Petition for Writ of Mandamus, Writ of Prohibition, and Request for Emergency Relief in the Texas Court of Criminal Appeals. [1]

Mr. Le Brocq's motion in the Carrollton Municipal Court was denied on March 15, 2018, and he filed his motion before the Texas Court of Criminal Appeals on April 23, 2018. On May 2, 2018, the Texas Court of Criminal Appeals ordered the Municipal Court judge to respond to Mr. Le Brocq's allegations. *Less than 2 weeks later,* on May 15, 2018, the State wrote to Mr. Le Brocq stating that it "now ha[s] the ability" to download such videos and burn them to flash drives. A concern that the prosecutor, Mary Scanlon, had *never mentioned before.* (Exhibit B).

Mr. Le Brocq was, and is, convinced the State was lying, misrepresenting facts to the court, and found that his prediction was correct—that the State would change its position once the illegal policy was removed from the small confines of the City's judicial system. Being almost certain that no upgrades had been done to the highly-advanced technology Carrollton already

---

[1] A copy of this filing is attached hereto as Exhibit A. The Petition includes all e-mails and motions discussed that caused the filing to be necessary.

maintained, he filed a Public Information request for documents which would show the purported upgrade. Carrollton responded with an invoice for over $7,000.00 for their estimate of over 300 hours of labor to find and produce the documentation showing the supposed upgrade that had taken place within the past three weeks.

On May 18, 2018, Mr. Le Brocq wrote a letter to the City of Carrollton councilmembers and Mayor detailing issues within Carrollton's justice system and requested a meeting to discuss the issues with them and other attorneys. (Exhibit C). Mr. Le Brocq did not receive a response from the City. Instead, on May 22, 2018, he received a letter from Defendant law firm Fanning Harper Martinson Brandt & Kutchin, P.C. written by Defendant Thomas P. Brandt. The letter stated, "[Mr. Le Brocq's letter to City Council was] a violation of Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct. **While [they] determine the appropriate course by which to address [Mr. Le Brocq's] ethical violation, please <u>cease and desist from contacting [their] clients directly."</u>** (Emphasis added) (underline in original), see Exhibit D.

Mr. Brandt further stated that he "represent[s] the City of Carrollton in [the] pending appellate matter regarding the petition for writ of mandamus before the Texas Court of Criminal Appeals."[2] Mr. Brandt's threatening letter lacked any merit and was highly offensive and constitutionally dangerous. Mr. Le Brocq e-mailed a response stating that "it was represented that [Mr. Brandt] represent[s] Judge Lyon and The City Attorney's Office . . . ." (Exhibit E). Mr. Le Brocq further explained "when [he] addressed the City, it was regarding overall issues within Carrollton and did not pertain to any case." *Id*.

---

[2] The *Mandamus* Petition filed in the Texas Court of Criminal Appeals was disposed of on June 27, 2018 pursuant to Mr. Le Brocq's Motion to Dismiss for Mootness. It is worth noting that Mr. Le Brocq requested the City's attorneys to represent they would keep the new policy that was coincidentally created after Mr. Le Brocq sought relief in a high-court. They refused, and consequently, Mr. Le Brocq had to expend his time and resources when the City had no reason not to comply with his requests.

Even as of today, neither Mr. Brandt, nor anyone is his law firm, has sent a letter of representation or filed an appearance for *any* of the City of Carrollton councilmembers or the Mayor. Mr. Brandt's law firm filed appearances for The Honorable Meredith Lyon and the City Attorney's Office in the *Mandamus* matter, only after Mr. Le Brocq requested he do so. Mr. Le Brocq filed a Motion to Disqualify the law firm and Mr. Brandt due to the obvious issues of joint representation with a Judge and Prosecutor that clearly undermines our system of justice. Instead of the State of Texas against Mr. Le Brocq's client, it was the State of Texas and the Judge versus Mr. Le Brocq's client.

Following the coincidental change in the City's discovery policy, Mr. Le Brocq sought written confirmation from the City Attorney's office that this policy would remain in place. Rather than providing said confirmation, the City appeared more interested in protracting litigation. Mr. Le Brocq, realizing that tax-payer dollars were being wasted and that the City acknowledged their clear error by changing their discovery policy, filed a motion to dismiss for mootness.

Lately, the Media has picked up interest in what Carrollton and their lawyers have done. In an apparent effort of retaliation for the negative press that Carrollton has been receiving, the City announced *two weeks ago* that they would no longer engage in plea bargaining with attorneys, save for a few extremely limited circumstances, and effectively deprived all defendants of any benefit of obtaining legal representation. This was most certainly done to exclude lawyers from Carrollton since virtually no benefit exists for hiring one now. Plea-bargaining is the way in which the majority of the cases in our criminal justice system are resolved, and Carrollton has done it for countless years until their unlawful actions were revealed to the public.

What is more concerning is the event that transpired *less than 2 weeks ago*. When Mr. Le Brocq arrived at his home in Carrollton on Sunday evening, there were two police vehicles

stationed in front of his home. Mr. Le Brocq called Carrollton dispatch and was advised they could not provide details as to their reason for being there. The entire street was nearly empty, but these vehicles happened to be parked in front of Mr. Le Brocq's home when he did not call for emergency services and was not at home when they arrived. Mr. Le Brocq eventually spoke to the officers, who did not answer his question as to why they were present.

 

Since Mr. Le Brocq has spent considerable efforts in revealing the truth behind Carrollton prosecutors' violations of the law and forced a change their "policy," he has been met with threats of being reported to the State Bar of Texas by the private law firm hired by Carrollton, cease and desist demands, retaliatory policies enacted to discourage Carrollton residents from hiring attorneys to represent them in criminal proceedings, and police mysteriously at his house. All of these events occurring back-to-back and not-so-coincidentally following Carrollton's rise in popularity on the local news. It is clear that if this injunction is not granted, that Mr. Le Brocq will suffer irreparable harm.

## ARGUMENT

To obtain a preliminary injunction, Mr. Le Brocq must establish "substantial likelihood of success on the merits," "irreparable injury," "a favorable balance of hardships," and "no adverse effect on the public interest." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268

(5th Cir. 2012); *see also* FED.R.CIV.P. 65(a). A district court's ultimate decision to grant or deny a preliminary injunction is reviewed for abuse of discretion. *Id*. at 267.

I.      **Plaintiff is Likely to Succeed on the Merits because Mr. Le Brocq's Rights to Free Speech, Assembly, and to Petition the Government are Protected by the First Amendment.**

The City, through its retained private counsel, without even the pretense of due process, denied Mr. Le Brocq a basic liberty of a free person: the right to voice his concerns and seek redress for the actions of city officials. To put a legal gloss on it, Mr. Le Brocq has been denied (without process) the right to speak and peaceably assemble at city facilities, or to communicate with the City at all, which others can do on a daily basis. He cannot appear before City Council to even comment or plead that this unconstitutional ban to be lifted, or even question why the City chose to threaten him via their private law firm, instead of hearing his concerns and those of other local attorneys.

Effectively, Mr. Le Brocq cannot even go to the Police Station and file a criminal complaint against another citizen. He cannot attend City Council meetings held the first and third Tuesday of each month in the City Council Chamber at City Hall—not without further retaliation in addition to that in which he has already experienced.

As held by the Supreme Court in *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 552-53 (1975):

> [The City's] action here is indistinguishable in its censoring effect from the official actions consistently identified as prior restraints in a long line of this Court's decisions. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-151 (1969); *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958); *Kunz v. New York*, 340 U.S. 290, 293-294 (1951); *Schneider v. State*, 308 U.S. 147, 161-162 (1939); *Lovell v. Griffin*, 303 U.S. 444, 451-452 (1938). In these cases, the plaintiffs asked the courts to provide relief where public officials had forbidden the plaintiffs the use of public places to say what they wanted to say. The restraints took a variety of forms, with officials exercising control over different kinds of public places under the authority of

particular statutes. All, however, had this in common: they gave public officials the power to deny use of a forum in advance of actual expression.

The law is clear. Even those whom the City dislikes for "airing the city's dirty laundry" have the right to exercise protected First Amendment speech. That right cannot be abridged without the government showing a compelling state interest, and it can *never* be abridged indefinitely.

a. The City Facilities from Which Plaintiff Has Been Banned Are Traditional Public Forums in Which Regulation of Speech Is Subject to Strict Scrutiny.

"[A] speaker's right to access government property is determined by the nature of the property or 'forum.'" *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 116 (5th Cir. 1992). There are three categories of forums: (1) traditional and designated public forums; (2) limited public forums; and (3) nonpublic forums. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 757-58 (5th Cir. 2010). Traditional public forums include sidewalks, streets, and public places that have been used for assembly and general communication. *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939). The state can also intentionally create "designated" public forums on other state property for the same widespread use as traditional public forums. *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 344 (5th Cir. 2001). Regulation of speech in traditional or designated public forums must pass strict scrutiny with a compelling state interest and narrow tailoring. *See SEIU, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010) (strict scrutiny requires that a restriction be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end," and that there be no "less restrictive means that would be at least as effective" (internal quotation marks omitted)).

Limited public forums, on the other hand, provide "for public expression of particular kinds or by particular groups." *Chiu*, 260 F.3d at 346. The government may restrict speech in

these limited public forums, as long as the regulation "(1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) ("[T]he State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."). A restriction based on subject matter "may be permissible if it preserves the purposes of that limited forum." *Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819, 829 (1995).

In the instant case, Mr. Le Brocq has been ordered to cease and desist from communicating with City of Carrollton City Council and the City of Carrollton as a whole. This would include speaking at public forums (the City Hall complex) and any other limited public forums where anyone employed by the City is present. In this case, it makes no difference the location. Whether held to strict scrutiny or a reasonableness test, an absolute ban of a single speaker from public places, forever, can never be a reasonable restriction on First Amendment speech.

The City Hall is a traditional public place that has been used for assembly and general communication in the City. They are also designated public fora. A designated public forum is created when the government intentionally makes property or a channel of communication generally open or available to a class of speakers rather than permitting only selective access to particular speakers who must obtain permission to use it. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998).

Both are places where the City conducts its business, and in order to participate in the affairs of government, access to City Hall is necessary. The City Hall houses the offices of City Council members, the Mayor, the City Manager, and the Clerk among other departments and

offices. City Hall is the location for many City meetings. Visitors to City Hall may come to get records from the City Clerk, to meet with Council members and the Mayor, to meet with the City Manager and his assistants, to attend or participate in city meetings, or even just to see artwork or other displays. All City Council staff maintain offices in City Hall. City Hall is open to the public from approximately 8am-5pm, with some variation for evening events. Accordingly, in order to even determine the true agenda of one of the hundreds of open meetings in Carrollton, access to City Hall is necessary.

As shown on its website, City Council meetings are held the first and third Tuesday of each month in the City Council Chamber at City Hall. At that time (and before a group of people for which Mr. Le Brocq is prohibited from speaking) any person may speak on the record.[3] There is no restriction on the topics on that may be discussed. The only limitation is that speakers may be removed from the room for "personal, impertinent, profane, or slanderous remarks . . . ." *Id*.

The law supports the position that meetings held at City Hall constitute a designated public forum. *See, e.g., City of Madison Joint Sch. Dist. No. 8* v. *Wis. Pub. Emp't Relations Comm'n*, 429 U.S. 167, 176 (1976) ("[W]hen the board sits in public meetings to conduct public business and hear the views of citizens, it may not be required to discriminate between speakers on the basis of ... their speech."); *see also Mesa v. White*, 197 F.3d 1041, 1044 (10th Cir. 1999) (noting a lack of dispute that a public comment period of a county commission meeting was a designated public forum); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989) ("[T]he city commission designated their meeting public forum when the commission intentionally opened it to the public and permitted public discourse on agenda items."); *Collinson v. Gott*, 895 F.2d 994, 1000 (4th Cir. 1990) (Phillips, J., concurring) ("Speech at public meetings called by government officials for

---

[3] http://www.cityofcarrollton.com/government/city-manager-s-office/city-secretary/public-forums-hearings.

discussion of matters of public concern is entitled to normal first amendment protections against general restrictions or ad hoc parliamentary rulings by presiding officials."); *Musso v. Hourigan*, 836 F.2d 736, 742 (2nd Cir. 1988) (noting that open school board meeting is place where public speech is usually allowed); *cf. Ark. Educ. Television Comm'n*, 523 U.S. at 680 (contrasting a nonpublic forum candidate debate with "an open-microphone format").  The critical determinant is "the government's intent with respect to the forum," *Chiu*, 260 F.3d at 346. "The state's efforts to exclude speakers from such traditional public forums are subject to rigorous first amendment scrutiny." *Estiverne v. Louisiana State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir. 1989).

    b.   <u>The Ban Imposed on Plaintiff Is Subject to, and Fails, Strict Scrutiny.</u>

       The ban imposed on Mr. Le Brocq through the Cease and Desist Letter is subject to, and fails, strict scrutiny.  First, the ban is a prior restraint on his ability to speak — the absolute worst, most disfavored kind of speech restriction.  The ban continues in effect as to Mr. Le Brocq and prevents him from attending City Council meetings to engage in speech or to seek redress of his grievances. "A prior restraint on speech exists when the government can deny access to a forum for expression before the expression occurs." *Café Erotica of Florida, Inc*. v. *St. Johns Cnty*., 360 F.3d 1274, 1282 (11th Cir. 2004) (internal quotation marks omitted).

       The complete exclusion of a speaker from a public forum is thus a classic form of prior restraint. *See, e.g., Southeastern Promotions*, 420 U.S. at 552-53; *Stacy v. Williams*, 306 F. Supp. 963, 971 (N.D. Miss. 1969) ("[S]peaker regulations, by their very nature, constitute 'prior restraints' upon the freedoms of speech and assembly."). "[A]lthough prior restraints are not unconstitutional *per se*, any system of prior restraint is weighted with a strong presumption of constitutional infirmity." *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004).

Second, the ban is a single-speaker ban, which is inherently suspect and, thus, subject to strict scrutiny. Individual bans are not time, place or manner restrictions that regulate no more than the "when, where, and how" of speech. *Ward v. Utah*, 398 F.3d 1239, 1254 (10th Cir. 2005) (quoting 1 RODNEY A. SMOLLA, SMOLLA & NIMMER ON FREEDOM OF SPEECH §8.36 (2004)).

Rather, they are efforts to control who is speaking and naturally suggest implicit content discrimination by authorities. *See Turner Broad. Sys., Inc.* v. *FCC*, 512 U.S. 622, 658 (1994) ("[S]peaker-based laws demand strict scrutiny when they reflect the Government's preference for . . . what the favored speakers have to say (or aversion to what the disfavored speakers have to say)."). "If the government excludes a speaker who falls within the class to which a [traditional or] designated public forum is made generally available, its action is subject to strict scrutiny." *Ark. Educ. Television Comm'n*, 523 U.S. at 677 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. at 802). City Hall and other public facilities are open to all, so excluding a specific speaker must be met with strict scrutiny.

Third, the ongoing categorical ban on Mr. Le Brocq should be seen as a content-based restriction. It is continued in effect because he was engaging in protected speech and expressive conduct. The ban was launched retaliation against Mr. Le Brocq's speech directly related to City activities, particularly as it pertains to the justice system, where Mr. Le Brocq is an officer of the court. The ongoing ban's clear purpose is to prevent him from speaking in a public forum about matters of public concern.

The banning of Mr. Le Brocq was taken as part of Defendants' direct response to his whistle-blowing. These circumstances raise the inference that any ostensibly content-neutral justifications offered for those actions are pretextual (although, even worse in this case, Defendants have not

offered any justifications). *See Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 86 (1st Cir. 2004) ("Suspicion that viewpoint discrimination is afoot is at its zenith when the speech restricted is speech critical of the government, because there is a strong risk that the government will act to censor ideas that oppose its own.").

There is no question that the ban imposed on Plaintiff fails strict scrutiny. Even if Defendants' asserted interests were "compelling," the ban does not so much as make a half-hearted attempt at being narrowly tailored. Plaintiff is categorically prohibited from speaking to the City (whomever that may be), and he is barred from entering any public part of a number of public facilities for any purpose and for an indefinite (possibly even permanent) period of time.

Any interest the City has in preventing Mr. Le Brocq from communicating with it (and the City proffered none here) cannot be served by imposing such a draconian, blanket, lengthy ban on a person. For example, if a person were nonviolently disruptive at a City Council meeting and ejected, it would be completely absurd (and an obvious First Amendment violation) for the City to impose a ban that prevented him from standing on the steps of the City Hall or the Municipal Plaza Buildings and holding up a sign protesting his exclusion during future meetings.

Further, the City has numerous less restrictive alternatives available should they become necessary, such as evicting Mr. Le Brocq if he were unlawfully disruptive when communicating with the City (and there are no facts on that point). *See Berger v. City of Seattle*, 569 F.3d 1029, 1043 (9th Cir. 2009) (en banc) ("Rather than requiring all speakers to pre-register with the government as a prerequisite to engaging in communicative activity, the City could simply enforce its existing rules against those who actually exhibit unwanted behavior."). Also, limited exclusions from City facilities for an hour, a day, or even, in a proper case, several days as a "cooling-off"

period could effectively serve the City's interests in preventing disruption of city business and promoting public safety while proscribing substantially less protected activity.

   c.   <u>Defendants' Ban Fails Even Intermediate Scrutiny.</u>

As stated earlier, the traditional cases splitting hairs over the nature of the forum dictating the standard of review bear little relevance in this case, where the complained of violation is a complete and total ban of Mr. Le Brocq from the property in question.  *See, e.g., Content and Viewpoint Discrimination: Malleable Terms Beget Malleable Doctrine*, 13 Comm.L.&Pol'y 131, 180 (2008) (examining First Amendment case law and recommending "[a] more fruitful approach distinguishing content from viewpoint [which] examines the case facts in context").  That is because, even if Defendants' exclusion of Mr. Le Brocq from limited public forums was a content-neutral speech restriction, it still is unconstitutional because it is not narrowly tailored to advance a substantial governmental interest and fails to leave open ample alternative channels of communication. *See Supple*, 969 F.2d at 118 (describing intermediate scrutiny applicable to content-neutral regulations of speech).  Again, it is necessary to emphasize that Defendants have not offered any reason for their ban, let alone any content-neutral reasons, further imperiling their position.

A content-neutral regulation is "narrowly tailored," if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). "At a minimum, a regulation cannot be narrowly tailored unless the cost to speech is 'carefully calculated' and the fit between the burden and the state interest is 'reasonable.'" *Supple*, 969 F.2d at 118 (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989)). "The government bears the burden of establishing that the

regulations are reasonable. Even a legitimate government interest cannot justify a restriction if the restriction accomplishes that goal at an inordinate cost to speech." *Id.* (citation omitted).

Although the narrow tailoring requirement for content-neutral speech restrictions is not a least-restrictive-alternative test, a regulation must nonetheless not be "substantially broader than necessary to achieve the government's interest." *Rock Against Racism*, 491 U.S. at 800, and generally without "obvious, less burdensome alternatives," *Berger*, 569 F.3d at 1041.

Assuming, without conceding, that the governmental interests for the ban from communicating with the city, and thereby, attending and speaking at City Council meetings on city property effected through the Cease and Desist Letter are substantial, banning a speaker from City Hall permanently for all purposes based on nothing besides a nonviolent, non-disruptive e-mail message intimately associated with protected expressive activity fails *Rock Against Racism's* test. Banning a speaker from City Hall simply because he sought to acquire public information and speak about matters of public concern, without any nexus to disruption to city business or harm to city property whatsoever, quite simply fails to advance any City interest in any conceivable fashion.

Instead, this ban is patently unreasonable in every way. The burdens it imposes — a complete ban on Mr. Le Brocq's presence and speech, indefinitely and presumably permanently — are out of all proportion to any undeclared City interest. The stark mismatch between any government interest and harsh burden imposed shows the ban was imposed without careful consideration of the ban's "cost to speech."

Also, the ban does not leave Mr. Le Brocq ample alternative channels to convey his message because it precludes him from accessing City officials with discretionary authority over his ban. "[A]n alternative is not ample if the speaker is not permitted to reach the intended

audience." *Berger*, 569 F.3d at 1049 (internal quotation marks omitted). City Hall is the daily workplace of many of the officials who are most of Mr. Le Brocq's intended audience. It is also where the meetings are held in which he desires to voice his concerns so more of the public can be apprised of the City's wrongdoings. Practically speaking, there is no viable alternative forum within the city Plaintiff may utilize.

## II.     Defendants' De Facto Cease and Desist Letter Policy Is Facially Unconstitutional Due to Lack of Objective Standards, Vagueness, and Overbreadth

Defendants' Cease and Desist Letter policy vests discretion in city officials to ban an individual from communication with any or all city employees, officials, any or all city property, even permanently, based solely on a single official's subjective view. That policy suffers from at least three constitutional flaws.

First, it is a prior restraint because it gives public officials discretion to "forbid [citizens] the use of public places to say what they wanted to say." *See Southeastern Promotions*, 420 U.S. at 552-53. Such restraints have been "invariably" condemned when "the exercise of such authority was not bounded by precise and clear standards." *Id*. They also face a "strong presumption of constitutional infirmity." *Collins*, 382 F.3d at 539. To curtail the risk that arbitrary application of a speech restriction will "becom[e] a means of suppressing a particular point of view," a prior restraint on expressive activity "must contain 'narrow, objective, and definite standards'" to channel the discretion of the official charged with its enforcement. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130-31 (1992) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc*., 452 U.S. 640, 649 (1981), and *Shuttlesworth*, 394 U.S. at 150-51); *accord SEIU*, 595 F.3d at 596.

Second, the policy is unconstitutionally vague. A government regulation of speech "must be drawn with some specificity" so as to "provide 'fair notice' so that its prohibitions may be avoided by those who wish to do so." *SEIU,* 595 F.3d at 596-97 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110-12 (1972)). The City's lawyers have adamantly refused to provide a written policy to Mr. Le Brocq despite his request, stating whom, if any, of the Carrollton City councilmembers or Mayor, that Mr. Brandt and his firm represents.

Third, the policy is unconstitutionally overbroad. A speech restriction is "subject to facial review and invalidation" under the overbreadth doctrine "in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected." *Forsyth Cnty.*, 505 U.S. at 129-30.

Defendants' *de facto* policy lacks anything like the required narrow, objective, and definite channeling standards required of a system of prior restraint. The standard applied before issuing the notice is completely subjective – so much so that there is not even a written policy guiding the determination. There are also no guidelines telling officials how to decide how much city property a notice recipient should be banned from. The standards for determining a ban's duration are also impermissibly indefinite. Because of these deficiencies, the policy's scheme inevitably "involves appraisal of facts, the exercise of judgment, and the formation of an opinion" without sufficiently "narrow, objective, and definite standards," making "the danger of censorship and of abridgement of our precious First Amendment freedoms . . . too great to be permitted." *Forsyth Cnty.*, 505 U.S. at 131 (internal quotation marks omitted).

The policy's subjectivity and lack of standards also makes it unconstitutionally vague. Citizens like Mr. Le Brocq have no fair notice of whether their conduct will subject them to a ban from communicating with City Council or entering City Hall and other city property to speak about

concerns regarding Carrollton's justice system. The chilling effect of the policy extends to all citizens who may be dissuaded from whistle-blowing or speaking on controversial public matters in the future. Indeed, that appears to be the intended result of the policy's enforcement.

Finally, the policy is overbroad because it sweeps in a substantial amount of protected speech by entirely precluding Mr. Le Brocq from speaking anywhere in the area of exclusion at any time, regardless of whether the banned speech has any nexus to reality.

Further, the overbroad policy also suppresses core petitioning activities protected under the First Amendment. The policy permits barring recipients from early voting, meeting their elected Council representatives, and attending Council meetings for an indefinite period of time, possibly even permanently. The First Amendment forbids such dramatic overbreadth in policies that impinge on core protections for expressive and petitioning activities.

### III.   Plaintiff Will Suffer Irreparable Injury if the Defendants are not Enjoined from the Indefinite Ban on Communication with the City.

It is well-established that an injury is irreparable only "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc.*, 703 F.3d at 279 (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 575 (5th Cir.1974)). Because the City has caused, and continues to cause, damage to Mr. Le Brocq by denying his fundamental First Amendment rights to free speech, to peaceable assembly, and to petition the government, Mr. Le Brocq has suffered, and will continue to suffer, irreparable injury in the absence of an injunction.

"The loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Palmer ex rel. Palmer* v. *Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (internal quotation marks omitted); *see also* CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE &

PROCEDURE §2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

Defendants' enforcement of the Cease and Desist Letter issued to Plaintiff, indefinitely banning him from communicating and entering a number of City facilities to express his voice, is an unconstitutional prior restraint on his speech in traditional public forum in violation of the First Amendment. The ban patently fails the narrow tailoring and least-restrictive alternative requirements of content-based speech restrictions in such a forum, or even the narrow tailoring and ample alternatives requirements necessary to survive intermediate scrutiny as ostensibly content-neutral regulations of speech. Defendants' undefined and vague policy respecting issuance of such letters is an unconstitutional prior restraint that fails to provide any narrow, objective, and definite guidelines to channel the discretion to exclude speakers from traditional public fora.

Mr. Le Brocq has suffered, and unless this Court issues a preliminary injunction, will continue to suffer irreparable injury from the denial of his fundamental First Amendment rights. Moreover, the continued adverse impact of the ban on Mr. Le Brocq's ability to conduct his law practice freely, without impediments from the City, including the police presence at his house, cannot be measured, but most assuredly causes him an immediate and irreparable injury which cannot be readily measured, if ever at all, in economic damages.

## IV.    The Continuing Irreparable Injury to Plaintiff Outweighs Any Potential Harm to Defendants' Interest from the Limited Relief Sought.

The balance of equities strongly favors granting the preliminary injunctive relief Mr. Le Brocq seeks. Mr. Le Brocq will suffer irreparable injury in the form of the continued denial of his First Amendment rights and harassment in his personal life if an injunction is not granted, whereas there

is no substantial risk that the tailored relief Mr. Le Brocq seeks will impose any harm on Defendants.

These features of the requested temporary relief balance the importance of Mr. Le Brocq's First Amendment rights with Defendants' interests in ensuring public safety and health and continuity of city business, and they demonstrate that the injury to Mr. Le Brocq from denial of injunctive relief would far outweigh the theoretical harm to Defendants from its grant.

### V.      Granting the Requested Relief Would Serve the Public Interest.

Granting the requested injunctive relief "will not undermine the public interest, but will serve it, in that it will be in protection of First Amendment rights without any significant detrimental impact" on the public generally. *Smith v. Tarrant Cnty. Coll. Dist.*, 670 F. Supp. 2d 534, 539 (N.D.Tex. 2009). The public interest is served by ensuring that government officials act in compliance with their constitutional obligations; in contrast, the public interest is undermined by allowing unconstitutional actions by government officials to stand. *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997).

### VI.     Brandt's Letter Was a Threat to Scare Mr. Le Brocq from Exposing the City

Furthermore, neither the City nor its lawyers, can argue that the letter was even remotely related to the now-disposed *Mandamus* action in the Texas Court of Criminal Appeals. Mr. Le Brocq did not talk about his client, did not discuss the merits of the pending case, and did not address his issues to the City Attorney or to the Municipal Court. Instead, he addressed it to the very people that put those individuals into office—the City Council members.

Mr. Brandt violated the Texas Rules of Disciplinary Conduct by threatening a lawyer to gain advantage in a civil matter, which in this case was the suit for *Mandamus*. It did not work.

Furthermore, because Mr. Brandt stated that Mr. Le Brocq unequivocally violated the Texas Rules of Disciplinary Conduct (which Mr. Brandt cannot genuinely believe), Mr. Brandt, as a licensed Texas attorney, had the duty to report Mr. Le Brocq to the State Bar of Texas Office of Chief Disciplinary Counsel. As of the filing of this motion, more than a month after Mr. Le Brocq's supposed violation, Mr. Brandt has not filed anything with the State Bar of Texas. This makes sense because he has no reason to, and he knew his threat was baseless from its inception.

It is worth repeating that neither Mr. Brandt nor his law firm, after Mr. Le Brocq demanded a letter or appearance indicating their representation of the City of Carrollton, ever provided one. Mr. Brandt and his firm *did not, and do not,* represent the individual members of the Carrollton City council members, the Mayor, or the entire municipality as a whole. They were employed, apparently, to handle a single appellate matter and nothing more.[4]   Meredith Ladd, the City Attorney for the City of Carrollton, communicated the City's position:

> "Ladd stated that she was 'pleased to hear' that Le Brocq believes the issues in his petition have been resolved and that it looked forward to receiving his request to dismiss the petition, 'thereby relieving the City of the need to continue to employ an outside law firm in this matter.' Ladd also said that Le Brocq had offered to discuss settlement terms regarding the petition but that he had yet to make a motion to dismiss the petition and hadn't yet asked the city for a "specific settlement demand."[5]

Of course, Ladd's statement on behalf of the City of Carrollton was false, and Carrollton taxpayers needlessly spent tens of thousands of dollars in fighting Mr. Le Brocq, even after he

---

[4] Mr. Le Brocq filed a Public Information Request to obtain the retainer agreement between the defendant law firm and City. He was told to pay $432.00 for the records. Mr. Le Brocq paid this exorbitant amount of money and was told by the City's secretary that he would receive the documents in 2-3 hours. Once Mr. Le Brocq returned to his office, the same secretary called, stating they would have to refund Mr. Le Brocq his money because they would not be tendering the documents that Mr. Le Brocq was just informed he would receive shortly.

[5] https://www.dallasnews.com/news/carrollton/2018/05/30/attorney-sues-carrollton-use-private-law-firm-resolve-dispute-files-city-says-case-no-merit

informed the City he would dismiss his petition. Relevant here is the fact that Ms. Ladd spoke on behalf of the City of Carrollton. Significantly, Ladd did not defer to "the City's lawyers" and the statement was not made by the "City's lawyers." This is because Mr. Brandt and his firm were hired to deal with the *Mandamus* petition and nothing more. They were not hired to suppress Mr. Le Brocq's free speech, albeit that is what they did. Defendants cannot escape their ill-motives directed at Mr. Le Brocq. Defendants conduct is indefensible and offensive to the justice system.

In summary, banning the Plaintiff forever from communicating with the City and banning Mr. Le Brocq from attending City Council meetings at City Hall constitutes a ban from public fora to which this Court must apply strict scrutiny to ensure the protection of Mr. Le Brocq's right to free speech.  Applying strict scrutiny results in the conclusion that the ban set out in the Cease and Desist Letter violates Mr. Le Brocq's fundamental First and Fourteenth Amendment rights.

## PRAYER FOR RELIEF

For the foregoing reasons, Mr. Le Brocq respectfully requests that this Court issue the proposed temporary restraining order barring Defendants from enforcing the unconstitutional communication ban they have imposed on him and any and all other just and proper relief.

Date: July 6, 2018                          Respectfully submitted,

                                            **LE BROCQ LAW FIRM PLLC**

                                            /s/ Stephen Le Brocq
                                            Stephen Le Brocq
                                            Texas SBN: 24094791
                                            E: stephen@lebrocqlawgroup.com

                                            Plaza of Josey Ranch
                                            2150 North Josey Lane, Suite 227
                                            Carrollton, Texas 75006
                                            Phone: (469) 930-4385
                                            Fax: (866) 820-6005
                                            Email: SERVICE@lebrocqlawgroup.com

                                            *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on July 6, 2018, I electronically submitted the foregoing document for filing

with the United States District Court for the Northern District of Texas using the electronic case

filing system of the Court, and that all counsel of record will be provided a "Notice of Electronic

Filing" and access to this document.

                                            /s/ Stephen Le Brocq